UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SGT. MARIE ROTHER,

                        Plaintiff,

            -against-                                    1:12-CV-0397 (LEK/CFH)

THE NYS DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION; BRIAN FISCHER,
Commissioner of NYS Department of
Corrections and Community Supervision;
GREENE CORRECTIONAL FACILITY;
COXSACKIE CORRECTIONAL
FACILITY; DAVID MORSE (in both
his official and individual capacity);
JAMES WEEKS (in both his official and
 individual capacity); JOHN DOE; and
RICHARD ROE (as unknown individual
defendants in both their official and
individual capacities),

                        Defendants.
_____

**MEMORANDUM-DECISION and ORDER**

## I.    INTRODUCTION

In this employment action, Plaintiff, Sergeant Marie Rother ("Plaintiff"), brings a number of

claims arising out of her treatment by supervisors and co-workers while she was employed by

Defendant the NYS Department of Corrections and Community Supervision ("DOCCS").  See

generally Dkt. No. 23 ("Amended Complaint").  Presently before the Court is Defendants' Motion

to dismiss.  Dkt. No. 25 ("Motion").  For the reasons that follow, the Motion is granted in part and

denied in part.

## II.    BACKGROUND[1]

Plaintiff began working as a DOCCS corrections officer in 1998.  Am. Compl. ¶ 6.  She was promoted to sergeant in 2009 and was subsequently transferred to Defendant Coxsackie Correctional Facility ("Coxsackie") in March 2010.  Id. ¶ 18.

### A.  Treatment at Coxsackie

At Coxsackie, Plaintiff was one of only two female sergeants.  Id. ¶¶ 36, 39.  Plaintiff was passed over in favor of male employees for overtime assignments for which she was qualified.  Id. ¶ 51.  She was denied training in an area of expertise, and was temporarily denied mandatory sexual harassment training.  Id. ¶¶ 52-54, 110-1.  Plaintiff was entitled by virtue of her  "seniority, training, and experience" to vacant single-shift job assignments but was instead assigned to work at various times.  Id. ¶¶  55-56, 61.  She was also forced to wait to be assigned to an open administrative-sergeant position.[2]  Id. ¶ 61.

Defendant Liutenant James Weeks ("Weeks") disciplined Plaintiff for her conduct relating to a nurse's administration of medicine to an inmate,[3] as well as Plaintiff's "inappropriate shower

---

[1] Because this matter is before the Court on a motion to dismiss, the allegations of the Amended Complaint are accepted as true and form the basis of this section.  See Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her favor").

[2] It is unclear whether the administrative-sergeant position entailed working different shifts.

[3] The Amended Complaint provides little information regarding this incident.  As alleged, Plaintiff "responded" to an "incident" that was "mishandled" by a nurse "with respect to an inmate's medication."  Am. Compl. ¶¶ 145-46.  The nurse filed a false report regarding this incident and Plaintiff was ordered by a "Lt. Meigs" to do likewise.  Id. ¶¶ 147-48.  Plaintiff "questioned" this order, was chastised for doing so, and then filed the false report.  Id. ¶¶ 149-50.  It is unclear what aspect of this conduct Plaintiff was disciplined for.  Id. ¶¶ 150, 155.

shoes, inappropriate response to an inmate's bad behavior and inappropriate preparation of a disciplinary meal for an inmate." Id. ¶¶ 145-48, 150-67. Weeks informally "counseled" Plaintiff for these incidents and formally "counseled" Plaintiff twice for the medication incident. Id. ¶¶ 150-51, 155, 176. The first formal counseling violated "protocol" in that there was no list of charges prepared. Id. ¶ 160. Both formal counselings violated "union rules" prohibiting multiple counselings for a single incident.[4] Id. ¶ 178. Documentation of the formal counseling was to remain in Plaintiff's personnel file for three years. Id. ¶ 182. Plaintiff was also unfairly chastised by a supervisor for leaving a document with a supervisor's secretary rather than giving it to the supervisor himself. Id. ¶¶ 143-44. Plaintiff alleges that all of the conduct for which she was disciplined or chastised was proper.

Plaintiff points to three incidents of harassing and injurious personal treatment at Coxsackie. In early January 2011, Defendant David Morse ("Morse"),[5] a Coxsackie and DOCCS employee,[6] told Plaintiff—in front of inmates, her co-workers, and her subordinates—that she had received her administrative-sergeant position by performing sexual favors and that she was a "bitch and a

---

[4] The second formal counseling appears to have been a mere continuation of the first formal counseling, which, as discussed *infra*, was not completed because of Plaintiff's medical issues. However, Plaintiff alleges that both formal counselings violated "union rules" because the informal counseling she had already received constituted the one permitted counseling for the medication incident. Am. Compl. ¶ 177-78.

[5] Other individuals named as Defendants in this action include Brian Fischer ("Fischer"), the Commissioner of DOCCS, as well as John Doe ("Doe") and Richard Roe("Roe"), whom the Amended Complaint describes as "any unknown employees of DOCC[S], Greene Correctional Facility or Coxsackie Correctional Facility who participated in discrimination and retaliation against Sgt. Rother and/or any of the other known and unknown actions which violated any of her rights as set forth in this complaint." Am. Compl. ¶ 32. Morse, Weeks, Fischer, Doe, and Roe will be collectively referred to as "the Individual Defendants."

[6] The Amended Complaint does not provide Morse's position. Plaintiff now alleges that Morse was a co-worker with "superior responsibility." Dkt. No. 29 ("Response") at 23.

backstabber," "a stupid cunt," and a "whining bitch" who "sucked." Id. ¶¶ 63, 65-66.

Approximately two weeks later, Plaintiff discovered that her chair had been removed and replaced with a chair intended for inmates, and that her computer and phone were no longer working. Id. ¶¶ 90-107. The loss of Plaintiff's phone prevented her from using the emergency response system had she needed to do so. Id. ¶¶ 103-06. She later found her chair "in pieces hidden behind large boxes." Id. ¶¶ 92-95.

In early March 2011, Weeks formally counseled Plaintiff in a small, airless inmate hearing room, even though such rooms were not used to counsel other DOCCS employees.[7] Id. ¶¶ 154-74. Weeks spent half an hour quietly thumbing through the employee manual, which intimidated Plaintiff, as did the unprecedented use of an inmate hearing room. Id. ¶¶ 159, 161-63. Although Weeks told Plaintiff that she did not need a union representative at the meeting, she was permitted to request one. Id. ¶¶ 164-65.

Plaintiff suffered severe physical and psychological reactions as a result of the Morse incident and Weeks's formal counseling. She suffered from "elevated blood pressure, shaking and nausea" after Morse's tirade. Id. ¶ 74 This incident made Plaintiff feel unsafe because her "credibility, authority and professionalism had been damaged in a significant way." Id. ¶ 78. Plaintiff passed out and was taken to the hospital after she left the inmate hearing room where Weeks was formally counseling her; she was diagnosed with anxiety, panic attacks, and stress.[8] Id.

---

[7] This was the first of the medication-incident-related formal counselings discussed *supra.*

[8] Weeks was aware, or should have been aware, that Plaintiff had a "history of migraines" and therefore should have known that the counseling session was likely to distress her. Am. Compl. ¶ 174.

¶¶ 168-75.[9]

Plaintiff repeatedly complained, both verbally and in writing, about this putatively discriminatory treatment. She complained to Weeks, Lieutenant Kenneth Baldwin ("Baldwin"), an "EAP" officer, Deputy Security Superintendent Christopher Miller ("Miller"), and the Department of Diversity Management about Morse's tirade. Id. ¶¶ 70, 73,79, 80, 82, 124-27. She complained about the destruction of her chair to "Lieutenant Humphrey" ("Humphrey") and Miller. Id. ¶¶ 98-101. Everyone to whom she complained was dismissive and took no remedial action even though video recordings of the Morse and chair incidents were available. See generally Am. Compl. Morse was not disciplined for his conduct. Id. ¶ 142. Plaintiff alleges that, as a result of her complaints about Morse, she was shunned by her co-workers and advised to check the tires of her vehicle because "rats" had their tires slashed. Id. ¶¶ 109-10. She also complained about this shunning but no remedial action was taken. Id. ¶¶ 139.

## B. Treatment at Greene

Plaintiff then transferred to Defendant Greene Correctional Facility ("Greene") (collectively with DOCCS and Coxsackie, the "Employer Defendants") on March 14, 2011. Id. ¶ 184. Plaintiff was denied a position to which she was entitled by job seniority and was instead assigned to the most difficult cell block, an assignment she could have declined but chose to accept to show that she was a "team player." Id. ¶¶ 185-86. Her performance was regularly scrutinized on video monitors and tapes that were generally reviewed only after an incident and were not used to regularly scrutinize male employees. Id. ¶¶ 191-203. Supervisors met with Plaintiff on multiple occasions to

---

[9] The New York Workers' Compensation Board subsequently found that Plaintiff had: (1) suffered stress as a result of the Morse and formal-counseling incidents; and (2) presented credible evidence that these incidents had caused Post Traumatic Stress Disorder, adjustment disorder, anxiety, and depression. Id. ¶¶ 251-58.

criticize her performance.  Id. ¶¶ 192-94.  She was formally counseled for her conduct in keeping a

cell block "under control," even though Plaintiff argued that her "solution was the safer solution."

Id. ¶¶ 200, 205.

On April 6, 2011, Plaintiff was told by another sergeant that she would be disciplined for an

incident that had happened on his shift, when Plaintiff was not working.  Id. ¶¶ 210-11.  Plaintiff

had a severe physiological reaction to this news, including hyper-ventilation, nausea, sweating, high

blood-pressure, and a migraine.  Id. ¶¶ 213-20.  She was taken to the hospital.  Id.

### C.  Treatment Pre-Retirement

The following day, Plaintiff was told by her doctor that she should not work for two weeks.

Id. ¶ 221.  She gave Greene paperwork needed to obtain workers' compensation payments for the

two-week period, but "Lieutenant Mahoney" refused to fill it out for four months because he

believed Plaintiff's injury was not work related.  Id. ¶¶ 224-30.  Plaintiff also received a letter from

Defendants in late July 2011 demanding that she "immediately return to work or be considered

AWOL" even though she was on approved medical leave.  Id. ¶¶ 231-32.[10]

Defendants falsely claimed that Plaintiff did not have sick or vacation time and thus did not

pay her while she was on leave.  Id. ¶ 234.  Defendants also falsely claimed that Plaintiff was

AWOL and on "probationary status," which, in combination with the failure to complete the

workers' compensation paperwork, rendered her "essentially" ineligible for a facility transfer that

she likely would have received had she been eligible.  Id. ¶¶ 235-36.

In May 2011, Plaintiff filed a discrimination complaint with the New York State Division of

_____

[10] It is unclear when or how Plaintiff, who was told by her doctor in early April that she
should not work for two weeks, was approved by DOCCS to be on medical leave through July.

Human Rights ("DHR"),[11] which commenced an investigation.  Id. ¶¶ 9, 237.  Defendants did not

provide DHR with relevant videos or documentation, and falsely told DHR that Plaintiff had been

on probation when she stopped working.  Id. ¶¶ 238-40.  Morse falsely described his tirade and

claimed that Plaintiff had lost her temper and behaved unprofessionally.  Id. ¶¶ 248-49.  Weeks

truthfully but misleadingly claimed that Plaintiff had not filed a written complaint with him;

Plaintiff had instead followed established procedure by filing a complaint with Baldwin.  Id. ¶¶ 246-

47.

Greene has also failed to return personal items left by Plaintiff.  Id. ¶ 250.  On September 2,

2011, Plaintiff retired.  Id. ¶ 263.  She is currently receiving disability benefits from both the Social

Security Administration and the New York State Retirement System.  Id. ¶¶ 266-67.

### D.  Procedural History

Plaintiff filed a Complaint with the Court on March 2, 2012.  Dkt. No. 1 ("Original

Complaint").  Defendants subsequently filed a Motion to dismiss and accompanying Memorandum

of law.  Dkt. Nos. 14 ("Original Motion"); 14-1 ("Original Memorandum").  Plaintiff then moved to

amend the Original Complaint, and Defendants agreed to withdraw the Original Motion if the Court

permitted Plaintiff to amend.  Dkt. Nos. 18, 21.  The Court permitted Plaintiff to do so, and Plaintiff

then filed the Amended Complaint.  Dkt. No. 22; Am. Compl.  In it, she brought eight claims: (1)

discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. 2000e *et

seq.*; (2) retaliation under Title VII; (3) denial of equal protection pursuant to 42 U.S.C. § 1983; (4)

---

[11] This complaint was dual-filed with the Equal Employment Opportunity Commission
("EEOC").  Am Compl. ¶ 9.

denial of procedural and substantive due process; (5) First Amendment retaliation;[12] (6) conspiracy

under 42 U.S.C. § 1985(3); (7) intentional infliction of emotional distress ("IIED"); and (8) prima

facie tort. Am. Compl at 25-35. Plaintiff sought damages as well as declaratory and injunctive

relief. Id. at 36-37. Defendants then filed the Motion and an accompanying Memorandum of law

seeking dismissal of the Amended Complaint for both lack of subject-matter jurisdiction and failure

to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1) and 12(b)(6),

respectively, of the Federal Rules of Civil Procedure. Mot.; Dkt. No. 25-1 ("Memorandum").

Many of the specific grounds on which Defendants sought dismissal were identical to the grounds

raised in the Original Memorandum. Compare Original Mem., with Mem. Plaintiff filed the

Response and Defendants a Reply. Resp.; Dkt. No. 30 ("Reply").

## III.    DISMISSAL UNDER RULE 12(b)(1)

Defendants argue that the Eleventh Amendment deprives the Court of subject-matter

jurisdiction over Plaintiff's claims to the extent those claims are brought against the Employer

Defendants or for damages against the Individual Defendants in their official capacities. Mem. at

5-6.[13] "The Eleventh Amendment immunizes states and state agencies from suits that seek both

---

[12] While Plaintiff explicitly states that her equal-protection claim is brought pursuant to §
1983, she does not state the specific procedural mechanism upon which her due-process and First
Amendment claims rest. These claims, to the extent they seek damages, must be brought pursuant
to § 1983 as well. See Koumantaros v. City Univ. of N.Y., No. 03 Civ. 10170, 2007 WL 840115, at
*5 (S.D.N.Y. Mar. 19, 2007) ("Plaintiff claims defendant violated the due process and equal
protection clauses of the Fourteenth Amendment. . . . [B]ecause § 1983 provides a remedy for
plaintiff's causes of action, plaintiff cannot base her constitutional claims directly on the Fourteenth
Amendment." (citing Pauk v. Bd. of Trustees of City Univ. of N.Y., 654 F.2d 856, 865 (2d Cir.
1981))); see also Koger v. Woody, No. 9-cv-90, 2009 WL 1766639, at *7 (E.D. Va. June 22, 2009)
("A claim of 'retaliation' for the exercise of First Amendment rights must be asserted under 42
U.S.C. § 1983.").

[13] Plaintiff correctly notes that Defendants failed to comply with Local Rule 7.1(a)(2), which
requires that motions to dismiss for lack of subject-matter jurisdiction must be accompanied by an

monetary damages and injunctive relief." <u>Kozaczek v. N.Y. Higher Educ. Servs. Corp.</u>, No. 10-cv-107, 2011 WL 3687379, at *4 (D. Vt. Aug. 23, 2011) (citing <u>Cory v. White</u>, 457 U.S. 85, 90-91 (1982); <u>Alabama v. Pugh</u>, 438 U.S. 781, 782 (1978)).[14]  DOCCS and it facilities are state agencies for purposes of the Eleventh Amendment.  <u>See</u> <u>Simmons v. Gowanda Corr. Facility</u>, No. 13-CV-0647, 2013 WL 3340646, at *2 (W.D.N.Y. July 1, 2013); <u>Jackson v. Johnson</u>, 985 F. Supp. 422, 426 (S.D.N.Y. 1997).

   States may waive their sovereign immunity or Congress may abrogate that immunity pursuant to authority granted by a subsequent constitutional amendment.  <u>Gollomp v. Spitzer</u>, 568 F.3d 355, 366 (2d Cir. 2009); <u>In re Deposit Ins. Agency</u>, 482 F.3d 612, 623 (2d Cir. 2007). Congress did so in passing Title VII pursuant to its enforcement power under Section Five of the Fourteenth Amendment.  <u>See</u> <u>Nevada Dep't of Human Res. v. Hibbs</u>, 538 U.S. 721, 729-30 (2003); <u>Fitzpatrick v. Bitzer</u>, 427 U.S. 445 (1976).  The Motion, to the extent it seeks dismissal of Plaintiff's Title VII claims under Rule 12(b)(1), is therefore denied.  Because Congress has not abrogated, and New York has not waived, sovereign immunity with respect to Plaintiff's non-Title VII claims, <u>see, e.g.</u>, <u>Santiago v. N.Y.S. Dep't of Corr. Servs.</u>, 945 F.2d 25, 30 (2d Cir. 1991); <u>Moore v. City of New</u>

---

affidavit.  Resp. at 21.  The Court deems this omission harmless because Defendants have raised only legal arguments.  Moreover, even if Defendants' failure to file an affidavit rendered dismissal pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure inappropriate, the Court would still *sua sponte* dismiss, pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure, those claims over which it lacked of subject-matter jurisdiction.

   [14] Plaintiff argues that her claims should not be dismissed on Eleventh Amendment grounds before she conducts discovery regarding the Employer Defendants' "patterns and practices with respect to sex discrimination and constitutional violations."  Resp. at 21.  This appears to be a reference to the requirement that a  municipality cannot be held liable under § 1983 unless the violation of an individual's rights was the result of a custom or policy.  <u>See</u> <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658, 690-695 (1978).  This requirement has no bearing on states' sovereign immunity under the Eleventh Amendment.

York, No. 08-CV-2449, 2011 WL 795103, at *4, *7 n.3 (E.D.N.Y. Feb. 28, 2011); Koumantaros, 2007 WL 840115, at * 5, those claims, to the extent they are brought against the Employer Defendants, are dismissed for lack of subject-matter jurisdiction.

"The 'state' for purposes of the Eleventh Amendment generally includes . . . state officials sued in their official capacities." Riley v. Town of Bethlehem, 44 F. Supp. 2d 451, 457 (N.D.N.Y. 1999) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)).  In Ex Parte Young, 209 U.S. 123 (1908), the U.S. Supreme Court "carved out a 'narrow exception to the general rule of Eleventh Amendment immunity from suit.'" Murray v. New York, 585 F. Supp. 2d. 471, 472 (W.D.N.Y. 2008) (quoting Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 438 (2004)).  Under this exception, "'a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law.'" State Emps. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 95 (2d Cir. 2007) (quoting In re Deposit Ins. Agency, 482 F.3d at 617).  A party may sue under Ex Parte Young to stop a present and continuing violation of federal law that is premised on past state actions, but cannot obtain relief that would be tantamount to an award of damages for those past actions.[15]  See Papasan v. Allain, 478 U.S. 265, 278, 281 (1986); State Emps. Bargaining Agent Coalition, 494 F.3d at 97-98.  In the employment context, a request for reinstatement is not barred by the Eleventh Amendment because "[r]einstatement is purely prospective injunctive relief that orders the state official to return the

---

[15] Plaintiff argues that her claims against the Individual Defendants should not be dismissed on Eleventh Amendment grounds before she conducts discovery "with respect to their official vs. individual capacities . . . and thus a determination of immunity and/or qualified immunity."  Resp. at 21.  But because the Eleventh Amendment automatically applies where a state official is sued for damages in her official capacity, and because Defendants seek dismissal only of Plaintiff's damages claims against the Individual Defendant in their official capacities, the requested discovery would be irrelevant.

former employee to the state's payroll." Dwyer v. Regan, 777 F.2d 825, 836 (2d Cir. 1985). The recovery of attorneys' fees is also permitted as relief ancillary to prospective relief. N.Y.C. Health & Hosps. Corp. v. Perales, 50 F.3d 129, 135 (2d Cir. 1995). However, a claim for damages, including back pay, front pay, and compensatory and punitive damages, is barred by the Eleventh Amendment. See Campbell v. Ark. Dep't of Corr., 155 F.3d 950, 962 (8th Cir. 1998); Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698 (3d Cir. 1996); Freeman v. Mich. Dep't of State, 808 F.2d 1174, 1179 (6th Cir. 1987); Dwyer, 777 at 836. Plaintiff's non-Title VII claims against the Individual Defendants in their official capacities are therefore, to the extent damages are sought, dismissed for lack of subject-matter jurisdiction.[16]

## IV.     DISMISSAL UNDER RULE 12(b)(6)

### A.  Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Fed. R. Civ. P. 12(b)(6). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged

---

[16] Plaintiff has not brought Title VII claims against the Individual Defendants, as there is no individual liability under Title VII. See Tomka v. Seiler Corp., 66 F.3d 1295, 1314 (2d Cir. 1995).

misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. See id. at 678-79. Where a plaintiff has already been given notice of a claim's deficiencies and the opportunity to amend her complaint, a court may dismiss that claim with prejudice. See Advanced Marine Tech. v. Burnham Sec., Inc., 16 F. Supp. 2d 375, 384 (S.D.N.Y.1998). Leave to amend should also be denied if any amendment would be futile. See Foman v. Davis, 371 U.S. 178, 182 (1962); Rivera v. Governor of N.Y., No. 02-7962, 2004 WL 569274, at *1 (2d Cir. Mar. 23, 2004).

**B. Title VII Claims**

*1. Discrimination*

Defendants argue that Plaintiff's Title VII discrimination claim must be dismissed because Plaintiff has not alleged any conduct amounting to an adverse employment action. See Mem. at 6-13; Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir. 2006) (noting that conduct is actionable as discrimination under Title VII only where it amounts to an "adverse employment action"). "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." Terry v. Ashcroft, 336 F.3d 128, 133 (2d Cir. 2003) (internal quotation marks omitted). A hostile work environment constitutes an adverse employment action. Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002). "[T]he misconduct shown must be 'severe or

pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." Id. at 374 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). A plaintiff may show that "a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [his] working environment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (citation and internal quotation marks omitted). "[C]ourts should examine the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's job performance." Rivera v. Rochester Genesee Reg'l Transp. Auth., 702 F.3d 685, 693 (2d Cir. 2012) (citation, internal quotation marks, and alterations omitted).

Here, Plaintiff alleges that she was subjected to a public verbal tirade featuring the use of offensive and explicitly gendered terms—a tirade that reduced her standing among co-workers and inmates and had the potential to endanger her safety. Such conduct might, alone, suffice to give rise to a hostile-work-environment claim. See Dawson v. Cnty. of Westchester, 373 F.3d 265, 273 (2d Cir. 2004) (reversing grant of motion to dismiss where correctional-officer plaintiffs' co-workers disseminated sexually-explicit letters written by inmates regarding plaintiffs); Howley v. Stratford, 217 F.3d 141, 154 (2d Cir. 2000) (reversing grant of summary judgment on hostile-work-environment claim based primarily on a single incident where supervisor publicly called firefighter-plaintiff a "whining cunt" and suggested that she had not been promoted because she did not "suck cock good enough"). This is particularly so given the dangerous nature of correctional work:

> [I]n the prison context especially, officers must depend upon their co-workers for mutual protection and rely upon them for their own ability to assert authority over others in potentially dangerous situations. In such a setting, actions of co-officers and superiors that undermine an officer's sense of personal safety or compromise her

13

> capacity to command respect and obtain compliance from co-workers, subordinates, and inmates assume greater, not lesser, significance.

Dawson, 373 F.3d at 273 (2d Cir. 2004); see also Howley, 217 F.3d at 154 (noting that the "fomenting of gender-based skepticism" might easily diminish the respect accorded plaintiff and thereby impair her ability to lead in the "life-threatening circumstances often faced by firefighters"). Plaintiff's allegations regarding Morse's public tirade, in combination with putatively discriminatory co-worker shunning and tire-slashing threats, assignment denials, performance criticisms, discipline, vigilant monitoring, safety-threatening phone vandalism, and overtime- and leave-pay denials, are certainly sufficient to plausibly suggest the existence of an objectively hostile environment. See Petrosino v. Bell Atl., 385 F.3d 210, 229 (2d Cir. 2004) (holding that plaintiff could offer proof of her unsuccessful efforts to secure managerial positions in support of her hostile-work-environment claim); Duzant v. Electric Boat Corp. 81 F. App'x 370, 371-72 (2d Cir. 2003) (affirming denial of employer's summary judgment motion on discriminatory-denial-of-overtime claim); Parrott v. Krasicky, No. 12-CV-820, 2013 WL 3338570, at *2 (D. Conn. July 2, 2013) (denying motion to dismiss discriminatory-denial-of-paid-leave claim); Pratesi v. N.Y.S. Unified Ct. Sys., No. 08-4828, 2010 WL 502950, at *11 (E.D.N.Y. Feb. 9, 2010) (finding plaintiff's allegations of harassing comments and discriminatory non-promotion sufficient to withstand a motion to dismiss her hostile-work-environment claim); Anderson v. Nassau Cnty. Dep't of Corr., 558 F. Supp. 2d 283, 295-96 (E.D.N.Y. 2008) (denying summary judgment on hostile-work-environment claim based on discriminatory statements, failure to promote, and improper discipline). Plaintiff has also sufficiently alleged, through her description of the emotional and physiological toll of Defendants' treatment, that she subjectively perceived her work environment to be abusive.

Plaintiff also argues that her retirement was an adverse employment action because she was

constructively discharged.  See Resp. at 12.  "An employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily."  Terry, 336 F.3d at 151-52.  "The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?"  Pa. State Police v. Suders, 542 U.S. 129, 141 (2004).  This is a "demanding" standard.  Miller v. Praxair, Inc., 408 F. App'x 408, 410 (2d Cir. 2010).  "The standard for constructive discharge is even higher than that required to prevail on a hostile environment claim."  Mandel v. Champion Int'l Corp., 361 F. Supp. 2d 320, 327 (S.D.N.Y. 2005); see also Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 74 (2d Cir. 2000) (denying summary judgment on hostile-work-environment claim but granting summary judgment on constructive discharge claim).  "[A] claim of constructive discharge must be dismissed as a matter of law unless the evidence is sufficient to permit a rational trier of fact to infer that the employer deliberately created working conditions that were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."  Stetson v. NYNEX Serv. Co., 995 F.2d 355, 361 (2d Cir. 1993).

The constructive-discharge inquiry focuses on the working conditions preceding the employee's resignation.  See McKelvey v. Sec'y of U.S. Army, 450 F. App'x 532, 535 (6th Cir. 2011) ("Plaintiffs alleging constructive discharge must establish that 'the working environment *at the time of their resignation*' forced them to quit." (quoting Baugham v. Battered Women, Inc., 211 F. App'x 432, 440 (6th Cir. 2006))); Petrosino, 385 F.3d at 230 (finding no constructive discharge, despite eight-year hostile work environment, because employee had endured that harassment and employer's actions immediately preceding resignation had not "'ratcheted'" the harassment up to

15

"'the breaking point'" (quoting <u>Suders</u>, 542 U.S. at 147-48)); <u>Woodcock v. Montefiore Med. Ctr.</u>

<u>Univ. Hosp.</u>, No. 98-CV-4420, 2002 WL 403601, at *7 (E.D.N.Y. Jan. 28, 2002) (finding no

constructive discharge where plaintiff resigned months after most of the incidents upon which the

constructive-discharge claim was premised).  Constructive discharge is therefore unlikely to be

found where an employee's working conditions materially improve before she resigns.  <u>See</u> <u>Aguirre</u>

<u>v. City of Miami</u>, No. 04-23205-CIV, 2007 WL 2700579, at *5 (S.D. Fla. Sept. 12, 2007).

In this case, Plaintiff did not retire until September 2011.  The most egregious discriminatory

incident, Morse's tirade, took place eight months before her retirement and approximately three

months before she stopped working.  Moreover, this incident took place at a different facility than

the facility at which Plaintiff was working when she went on leave and to which Plaintiff would

have returned had she not resigned.  Plaintiff has not alleged that this incident, the vandalism of her

chair and phone, or the co-worker shunning at Coxsackie had any carry-over effect on her work

environment at Greene.[17]  <u>See</u> <u>Butts v. N.Y.C. Dep't of Hous. Pres.</u>, No. 00-CV-6307, 2007 WL

259937, at *21 (S.D.N.Y. Jan. 27 2007) (finding no constructive discharge where much of the

conduct underlying Plaintiff's constructive-discharge claim occurred under previous supervisors).

At Greene, Plaintiff: (1)  received a job assignment that she "would have preferred" not to

have and that she could have refused; (2) was watched while working; (3) was criticized for what

---

[17] Even if these incidents had happened more recently and at Greene, they likely would not give rise to a constructive-discharge claim.  As discussed *supra*, an employer must intentionally create intolerable working conditions for a constructive-discharge claim to lie.  <u>See</u> <u>Whidbee</u>, 223 F.3d at 74.  Thus, the conduct giving rise to an employee's resignation must be the result of an employer's "deliberate action."  <u>Id.</u>  An employer's negligent failure to prevent or remedy co-worker harassment does not amount to deliberate action.  <u>Id.</u>  Plaintiff has, at most, alleged that the Employer Defendants were negligent with respect to Morse's tirade and the co-worker shunning.

she perceived to be appropriate conduct; (4) was given a single formal counseling that did not carry with it any reduction in pay or responsibility; and (5) and was told by another sergeant that she would be disciplined for an incident for which she was not responsible. After Plaintiff stopped working in April 2011, Defendants delayed filling out her workers' compensation paperwork, made false statements to the DHR, denied Plaintiff paid leave, and "effectively" prevented her from a lateral transfer to another facility. Much of Defendants' conduct while Plaintiff was on leave had little impact on her working conditions—had Plaintiff returned to Greene, Morse's inaccurate statements to the DHR or Defendants' failure to timely fill out the workers' compensation paperwork would not have affected Plaintiff's day-to-day experience. Cf. Cecil v. U.S. Postal Serv., No. 3 Civ. 8404, 2004 WL 1886202, at *2 (S.D.N.Y. Aug. 24, 2004) (finding that significant time period between the commencement of plaintiff's sick leave and her retirement "makes it less likely that the resignation was prompted by an atmosphere so intolerable that a reasonable person would have felt compelled to resign." (internal quotation marks omitted)). Defendants' post-Coxsackie conduct, however discriminatory or unpleasant, cannot give rise to a constructive discharge claim, because a reasonable employee would not have felt compelled to resign. See Miller, 408 F. App'x at 410 ("[R]outine disagreements with supervisors or mild criticisms . . . are simply insufficient to establish the sort of 'intolerable' working conditions necessary to a constructive discharge claim"); Heno v. Sprint/United Mgmt. Co., 208 F.3d 847 (10th Cir. 2000) (no constructive discharge where plaintiff's telephone calls were monitored and her employer refused to further investigate her discrimination complaint after she filed an EEOC complaint); Munday v. Waste Mgmt. of N. Am., Inc., 126 F.3d 239, 241 (4th Cir. 1997) (holding that supervisor's ordering of other employees to spy on plaintiff and plaintiff's unfavorable assignment did not amount to a constructive discharge);

Stetson, 995 F.2d at 360-62 (holding that plaintiff's dissatisfaction with criticisms of his work, his compensation, and employer's failure to allow him to transfer, did not support claim of constructive discharge); Trimble v. Alliance-DeKalb/Rock-Tenn Co., 801 F. Supp. 2d 764, 778 (N.D. Ill. 2011) (finding that a constructive-discharge claim "clearly fail[ed]" where the plaintiff was "subjected to increased monitoring, received a negative review, was removed from the interview committee, and received a verbal warning—all without cause"); Carone v. Mascolo, 573 F. Supp. 2d 575, 597 (D. Conn. 2008) (finding no constructive discharge where plaintiff received four letters of reprimand and a suspension); Chavez v. Iberia Foods Corp., No. 05 CV 2464, 2007 WL 1959028, at *8 (E.D.N.Y. June 29, 2007) (granting summary judgment on constructive-discharge claim where plaintiff was allegedly deprived of bonuses and health benefits to which he was entitled).

However severe Plaintiff's reaction may have been to the treatment she received, and however many entities may have deemed Plaintiff disabled or unable to work as a result of that treatment, the intolerability of working conditions is an objective test. See, e.g., Munday, 126 F.3d at 241 (finding no constructive discharge where plaintiff went on job-stress-related disability leave); Spence v. Maryland Cas. Co., 995 F.2d 1147, 1156 (2d Cir. 1993); Carone, 573 F. Supp. at 597 (D. Conn. 2008); Nakis v. Potter, 422 F. Supp. 2d 398, 416 (S.D.N.Y. 2006).

A constructive-discharge claim may also lie where an employee resigns in the face of an impending and inevitable termination. See Bragg v. Navistar Int'l Transp. Corp., 164 F.3d 373, 377 (7th Cir. 1998) ("Constructive discharge exists to give Title VII protection to a plaintiff who decides to quit rather than wait around to be fired."); Petereit v. S.B. Thomas, 831 F.2d 1189 (2d Cir. 1989) (finding constructive discharge where employee was told that he would be fired at the end of a 90-day period). However, "apprehension of future termination is insufficient to establish constructive

discharge—instead, an employee is obliged not to assume the worst, and not to jump to conclusions too fast." Torrech-Hernandez v. Gen. Elec. Co., 519 F.3d 41, 52 (1st Cir. 2008); see also Stetson, 995 F.2d at 361 (finding no constructive discharge where employer "never either expressly or implicitly suggested that [plaintiff's] employment would be terminated"). Thus, "when an employee resigns rather than respond to disciplinary charges, the resignation cannot later be construed as a constructive discharge." Bailey v. N.Y.C. Bd. of Educ., 536 F. Supp. 2d 259, 266 (E.D.N.Y. 2007); see also Carmellino v. District 20, No. 03 Civ. 5942, 2006 WL 2583019, at *4 (S.D.N.Y. Sept. 6, 2006). When she ceased working and then later retired, Plaintiff had been formally counseled twice, had never been suspended, and was facing the possibility of unspecified additional discipline. The prospect of termination was simply too remote to give rise to a constructive-discharge claim premised on inevitable termination. Plaintiff's Title VII discrimination claim, to the extent it alleges constructive discharge, is therefore dismissed. The Court denies Plaintiff leave to amend because: (1) the Original Memorandum gave Plaintiff notice of the infirmities of her constructive-discharge allegations; and (2) any amendment would be futile. See Original Mem. at 6-9, 12-13, 16-20.

### 2. Retaliation

Defendants also seek dismissal of Plaintiff's Title VII retaliation claim on the ground that the conduct at issue was insufficiently adverse. Mem. at 18. Retaliation is actionable only where it amounts to a materially adverse action—an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. v. White, 548 U.S. at 53, 68 (2006). This is a "lesser standard" than the adverse-employment-action standard discussed *supra*. Evarts v. S. New Eng. Tel. Co., No. CV 112, 2006 WL 2864716, at *10

(D. Conn. Oct. 2, 2006). The litany of putatively retaliatory conduct Plaintiff endured following her discrimination complaints, including unmerited criticism and discipline, the failure to remedy Morse's treatment, repeated co-worker shunning and threats of tire slashing, video-camera monitoring, denial of vacation pay, and delay in filling out workers' compensation paperwork, might well have dissuaded a reasonable employee from complaining about discrimination. See Richardson v. N.Y.S. Dep't of Corr. Servs., 180 F.3d 426, 446 (2d Cir. 1999) ("[U]nchecked retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action so as to satisfy the [adverse action requirement]."), abrogated on other grounds by Burlington N, 548 U.S. 53; Uddin v. City of New York, 316 F. App'x 4, 5-6 (2d Cir. 2008) (finding disciplinary charges that were to remain in employee's file, as well as employer's removal of employee's phone, sufficiently adverse); Klaes v. Jamestown Bd. of Public Utils., No. 11-CV-606, 2013 WL 1337188, at *11 (W.D.N.Y. Mar. 29, 2013) (finding adverse action based on Plaintiff's compelled use of sick-time benefits). Plaintiff has thus sufficiently alleged a materially adverse action. However, for the reasons discussed *supra*, Plaintiff cannot make out a claim for retaliatory constructive discharge.

**B. Constitutional Claims**

Plaintiff brings four constitutional claims: (1) First Amendment retaliation; (2) denial of procedural and substantive dues process; (3) denial of equal protection under § 1983; and (4) conspiracy under § 1985(3). Am. Compl. at 26-31. The first claim is brought against "each Defendant;" the second against the Employer Defendants and the Individual Defendants in their official capacity; the third against "all Defendants;" and the fourth against Morse, Weeks, Roe, and Doe. Id. Defendants seek dismissal of that part of each of these claims not dismissed for lack of subject-matter jurisdiction.

## 1. First Amendment Retaliation

The First Amendment protects a public employee's speech from retaliation only where the employee spoke "on a matter of public concern." Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)). "Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." Snyder v. Phelps, 131 S. Ct. 1207, 1216 (2011) (citation and internal quotation marks omitted). Thus, speech that "primarily concerns an issue that is personal in nature and generally related to [the speaker's] own situation, such as his or her assignments, promotion, or salary, does not address matters of public concern." Jackler v. Byrne, 658 F.3d 225, 236 (2d Cir. 2011) (internal quotation marks omitted); see also Ezekwo v. N.Y.C. Health & Hosps. Corp., 940 F.2d 775, 781 (2d Cir. 1991) (upholding the dismissal of a medical resident's First Amendment claim involving complaints about aspects of residency program that negatively affected her because those complaints were "personal in nature and generally related to her own situation"); Agard v. N.Y.S. Dep't of Taxation & Fin., No. 10-CV-4726, 2012 WL 601474, at *6 n.7 (E.D.N.Y. Feb. 23, 2012) ("[R]etaliation against the airing of generally personal grievances is not brought within the protection of the First Amendment by the mere fact that one or two of a public employee's comments could be construed broadly to implicate matters of public concern." (quoting Ruotolo, 514 F.3d at 190) (quotation marks and brackets omitted)).

All of Plaintiff's complaints regarding discrimination, whether made internally or to the EEOC and DHR, concerned only discrimination against her. This speech was therefore not on a matter of public concern. See Pressley v. City of New York, No. 11-CV-3234, 2013 WL 145747, at

21

*10 (E.D.N.Y. Jan. 14, 2013) (finding speech unprotected where "Plaintiff's EEOC complaints concerned unfair treatment and denial of transfers, which involves her own situation and is not a public matter"); Jay Jian-Qing Wang v. Swain, No. 09-CV-306, 2011 WL 887815, at *9 (N.D.N.Y. Mar. 14, 2011) ("The mere filing of an EEOC complaint does not equate with First Amendment protected speech . . . . [T]he nature of EEOC complaints are to address personal grievances about the way an employee has been treated by an employer."); cf. Friel v. Cnty. of Nassau, No. 12-CV-4297, 2013 WL 2316644, at *16 (E.D.N.Y. May 25, 2013) (finding protected speech where plaintiff's EEOC charge concerned how challenged policy was causing "'system-wide' gender discrimination impacting all female detectives, not just the Plaintiff"). For the same reason, Plaintiff's internal complaints regarding discipline she received, to the extent those complaints alleged merely that such discipline was procedurally improper or unfair, do not amount to speech regarding matters of public concern.

Plaintiff argues that some of her communications implicated prison safety, management, and inmate-welfare issues. Resp. at 15-16. But these communications cannot constitute protected speech because: (1) the Amended Complaint does not allege that Plaintiff addressed these issues; and (2) even if Plaintiff did address these issues, she did so in the context of complaining about her own working conditions or defending her conduct in the face of Defendants' criticisms and imposition of discipline. See Garcia v. City of Hartford Police Dep't, No. 95-CV-279, 2011 WL 4460321, at *13-14 (D. Conn. Sept. 27, 2011) (granting motion for summary judgment where plaintiff spoke at a press conference in order to defend himself from his employer's accusations); Carroll v. Neumann, 204 F. Supp. 2d 1344, 1351 (S.D. Fla. 2002) (finding that speech by plaintiff-toxicologist criticizing his employer's procedures was not on a matter of public concern because

22

speech was made in the context of plaintiff's defending himself against an internal investigation of errors occurring in his lab). Plaintiff now claims that she complained about "the improper use of State time (stalking on video monitors)" and "the vandalism of State property, which was a safety concern for everyone assigned to that work space." Resp. at 15. But while the Amended Complaint does allege that Plaintiff complained about being monitored and having her equipment vandalized, it does not allege Plaintiff ever addressed the budgetary and safety implications of this conduct. Even if she had done so, and even though Plaintiff does allege that she addressed inmate disciplinary procedures, she did so only in the context of either: (1) expressing concerns about her own working conditions; or (2) responding to, and attempting to challenge, reprimands and discipline. See Am. Compl. ¶¶ 98-101, 202, 205-06. This speech was therefore unprotected.

Plaintiff also alleges that she "questioned" an order to falsify a report regarding an incident that had been "mishandled by [a] nurse . . . with respect to an inmate's medication." Id. ¶¶ 146-49. But her allegations regarding the incident and Plaintiff's speech are entirely too sparse and vague to sufficiently allege that the latter was protected—speech questioning an order to lie is not inherently protected.[18] Cf. Buazard v. Meridith, 172 F.3d 546, 549 (8th Cir. 1999) ("If, as plaintiff contends, his superior ordered him to lie and then demoted him for refusing, an injustice has been done. But it is not one actionable . . . on a free-speech theory."); Poli v. SEPTA, No. Civ. A. 97-6766, 1998 WL 405052, at *8 (E.D. Pa. July 7, 1998) (finding employee-plaintiff's speech unprotected where plaintiff questioned employer's order because of consequences he believed he might face if he complied ). Plaintiff's First Amendment retaliation claim is therefore dismissed. The Court denies

_____

[18] Defendants previously noted that the Original Complaint's description of this incident was "vague" and "conclusory." Original Mem. at 13. Despite being put on notice of this deficiency, Plaintiff failed to provide any additional details in the Complaint.

Plaintiff leave to amend her First Amendment claim because: (1) the Original Memorandum gave Plaintiff notice of this claim's infirmities; and (2) any amendment would be futile. See Original Mem. at 6-12, 16-20.

### 2. Due Process

#### a. Procedural Due Process

The Fourteenth Amendment provides, in relevant part, that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1. "To plead a violation of procedural due process, a plaintiff must plausibly allege that he was deprived of property without constitutionally adequate pre- or post-deprivation process." J.S. v. T'Kach, 714 F.3d 99, 105 (2d Cir. 2013) (citing Ahlers v. Rabinowitz, 684 F.3d 53, 62 (2d Cir. 2012)). "[A] plaintiff must 'first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process.'" Id. (quoting Local 342 v. Town Bd. of Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994)) (second alteration in original).

Plaintiff premises her claim for deprivation of due process on her putatively constructive discharge. Am. Compl. ¶¶ 298-302. Her claim fails for two reasons. First, even if Plaintiff had a property right in her continued employment, she has not shown that she was deprived of that right—the Court has already determined *supra* that she was not constructively discharged. See Abel v. City of Algona, No. C07-956, 2008 WL 4542428, at *9 (W.D. Wash. Oct. 8, 2008) (applying Title VII constructive-discharge standard to claim for denial of procedural due process).

Moreover, even if Plaintiff was constructively discharged, she cannot show that she did not receive due process. While a public employee with a property right in her job is normally entitled to

a pre-termination hearing, see Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532 (1985), employees

who are constructively discharged are not.  See Hoover v. Cnty. of Broome, 340 F. App'x 708, 711

(2d Cir. 2009); Giglio v. Dunn, 732 F.2d 1133, 1134-35 (2d Cir. 1984) ("When an employee

resigns, the only possible dispute is whether the resignation was voluntary or involuntary, and this

cannot be determined in advance."); Fortunato v. Liebowitz, No. 10 Civ. 02681, 2012 WL 6628028,

at *4 (S.D.N.Y. 2012).[19]  As long as a meaningful post-resignation hearing is available, a

constructively discharged employee has received constitutionally adequate process.  Giglio, 732

F.2d at 1135; Hoover, 340 F. App'x at 711.  A hearing under N.Y. C.P.L.R. § 7801 *et seq.* ("Article

78 hearing") is meaningful.  Giglio, 732 F.2d at 1135; Hoover, 340 F. App'x at 711.  Thus, if

Plaintiff could have initiated an Article 78 proceeding, she has not been denied due process.

Article 78 proceedings are available to public employees, including employees of state

agencies.  See Giglio, 732 F.2d at 1135; Sebast v. Mahan, 754 F. Supp. 2d 423 (N.D.N.Y. 2010);

Allen v. Howe, 645 N.E.2d 720 (N.Y. 1994).  The only argument Plaintiff advances regarding the

putative unavailability of an Article 78 proceeding is that Defendants' "actions in refusing to

cooperate in providing paperwork to Worker's Compensation delayed the process beyond the 90

days limitation of an Article 78."  Resp. at 18.  Plaintiff errs in suggesting that Defendants' delay in

filling out workers' compensation paperwork caused the statute of limitations for an Article 78

---

[19]  Plaintiff correctly notes that, in general, a pre-deprivation hearing may be required where
the deprivation is predictable because it is the result of an established policy or procedure.  Hellenic
Am. Neighborhood Action Committee v. City of New York, 101 F.3d 877, 880 (2d Cir. 1996).
However, courts in this circuit have consistently found that this principle is inapplicable to
constructive-discharge claims and that a pre-resignation hearing is therefore not required even when
the constructive discharge was the result of an established policy or procedure or was otherwise
predictable.  See Giglio, 732 F.2d at 1134-35; Stenson v. Kerlikowske, No. 99-7833, 2000 WL
254048, at *1 (2d Cir. Mar. 3, 2000); Fleming v. Kerlikowske, No. 99-7677, 1999 WL 1212553, at
*2 (2d Cir. Dec. 10, 1999); Fortunato, 2012 WL 6628028, at *4.

proceeding to run, thereby rendering this adequate procedure unavailable to Plaintiff. Where a plaintiff is constructively discharged, the statute of limitations applicable to commencing Article 78 proceedings—N.Y. C.P.L.R. § 217(1)—begins to runs on the date of the resignation. See <u>Lewis v. State Univ. of N.Y. Downstate Med. Ctr.</u>, 826 N.Y.S.2d 722, 724 (App. Div. 2006); <u>Meyers v. City of New York</u>, 622 N.Y.S.3d 529, 534 (App. Div. 1995).[20] Here, Plaintiff resigned in September 2011, after Defendants had submitted the required workers' compensation paperwork. Moreover, Plaintiff has offered no explanation as to how the paperwork delay prevented her from bringing an Article 78 proceeding. While a workers' compensation finding might have provided some support for her assertion that she was constructively discharged, Plaintiff has not pointed to any authority suggesting that such a finding is a prerequisite to commencing an Article 78 proceeding or that an Article 78 hearing that takes place without such a finding is constitutionally defective. Her claim for a violation of procedural due process is therefore dismissed. Furthermore, the Court denies Plaintiff leave to amend her procedural-due-process claim because: (1) the Original Memorandum gave Plaintiff notice of this claim's infirmities; and (2) any amendment would be futile. See Original Mem. at 9-12. 15-20.

### b. Substantive Due Process

Plaintiff's claim for a violation of substantive due process also fails. "To state a substantive due process claim, a plaintiff must allege that: (1) the complained-of state action compromised a constitutionally-protected liberty or property right, and (2) the state action that deprived him of that interest was oppressive or arbitrary." <u>JG & PG ex rel. JGIII v. Card</u>, No. 08-CV-5668, 2009 WL 2986640, at *5 (S.D.N.Y. Sept. 17, 2009). "For a substantive due process claim to survive a Rule

---

[20] The statute of limitations is four months, not ninety days. <u>See</u> N.Y. C.P.L.R. § 217(1).

26

12(b)(6) dismissal motion, it must allege governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Velez v. Levy, 401 F.3d 75, 93 (2d Cir. 2005) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)).

As alleged in the Amended Complaint, Plaintiff's substantive-due-process claim is premised on her constructive discharge. See Am. Compl. ¶¶ 301-02. Because the Court has already determined that Plaintiff was not constructively discharged, this claim must be dismissed. See Carone, 573 F. Supp. at 596 (D. Conn. 2008).

The claim fails for another reason. "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." Albright v. Oliver, 510 U.S. 266, 273 (1994) (internal quotation marks omitted). Thus, substantive-due-process claims must be dismissed where they are "merely duplicative of claims explicitly protected under other constitutional sources." Roman v. Velleca, No. 11-CV-186, 2012 WL 4445475, at *10 (D. Conn. Sept. 25, 2012).

Here, Plaintiff's substantive-due-process claim overlaps entirely with her procedural-due-process claim—they both seek to remedy the same harm and challenge the same conduct. See Am. Compl. ¶¶ 296-302. Moreover, the harm and conduct challenged by the substantive-due-process, First Amendment, and equal-protection claims significantly overlap. Because the claim for substantive due process is subsumed by Plaintiff's other constitutional claims, it must be dismissed. See Cronin v. St. Lawrence, No. 08-CV-6346, 2009 WL 2391861, at *8 (S.D.N.Y. Aug. 5, 2009).

In her Response, Plaintiff argues that her substantive-due-process claim is also premised, in part, on Defendants' discriminatory failure to transfer her, provide her with paid leave, and submit

her workers' compensation paperwork. Resp. at 19. But a claim based on this conduct is also subsumed by Plaintiff's equal-protection claim; moreover, this conduct does not shock the conscience and thus does not rise to the level of a substantive-due-process violation. See Thomas v. N.Y.C. Dep't of Educ., No. 10-CV-464, 2013 WL 1346258, at *17 (E.D.N.Y. Mar. 29, 2013) (holding that discriminatory failure to accommodate disabled plaintiff and compelled leave of absence did not amount to a substantive-due-process violation). Plaintiff's claim for a violation of substantive due process is therefore dismissed. The Court denies Plaintiff leave to amend because any amendment would be futile.

### 3. Equal Protection

"To prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005). Defendants argue that Plaintiff has failed to point to comparators—similarly situated male employees who received more favorable treatment than she did—and has offered only "conclusory" allegations of discriminatory intent. Mem. at 20-21. But Plaintiff alleges that no male employee was subjected to the treatment of which she complains, including excessive monitoring, procedurally irregular discipline, and the denial of overtime. See Am. Compl. ¶¶ 157, 197. Because Plaintiff was one of only two female sergeants at Coxsackie, some of these male employees would almost necessarily have been supervised by the same supervisors as Plaintiff and had similar job responsibilities. Moreover, Plaintiff alleges that she was criticized and disciplined repeatedly for proper and innocuous conduct while Morse received no criticism or discipline whatsoever for his patently improper and inappropriate tirade, and that she was to be disciplined for conduct committed by a male sergeant.

28

These comparator allegations are sufficient.  See Russell v. Aid to Developmentally Disabled, Inc., No. 12-CV-389, 2013 WL 633573, at *12 (E.D.N.Y. Feb. 20, 2013) (finding that plaintiff's allegations that she received more severe punishment than male co-workers for similar offenses met comparator requirement).

In addition to this comparator evidence, Plaintiff has offered additional evidence of discrimination, including the explicitly sexist language used by Morse; Defendants' repeated contravention of DOCCS policy and standard practice in, *inter alia*, watching her on video monitors, counseling her multiple times for the same incident, denying her overtime and training, and failing to give her assignments to which she was entitled; and Defendants' discipline of Plaintiff for proper conduct.  This is sufficient evidence of discriminatory intent.  See Back v. Hastings-on-Hudson Union Free Sch. Dist., 365 F.3d 107 (2d Cir. 2004) (denying employer's motion for summary judgment where the plaintiff offered evidence of discriminatory comments); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1226-27 (2d Cir. 1994) (finding sufficient evidence of discriminatory intent where employer's treatment of plaintiff violated its own policy); Bonura v. Chase Manhattan Bank, N.A., 795 F.2d 276, 277 (2d Cir. 1986) (same); see also EEOC. v. La. Office of Cmty. Servs., 47 F.3d 1438, 1446 (5th Cir. 2005) (noting that employer actions that are "irrational" may give rise to inference of discrimination).  Thus, Plaintiff has sufficiently alleged a § 1983 claim for equal protection.  However, for the reasons discussed *supra*, the claim is dismissed to the extent it seeks to hold the Individual Defendants liable for constructively discharging Plaintiff.

Defendants seeks dismissal of the equal-protection claim against Fischer because Plaintiff has failed to allege personal involvement.  "It is well settled in this Circuit that personal

involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (citation and internal quotation marks omitted). Thus, a supervisor's liability "cannot rest on respondeat superior." Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003). Supervisory personnel may be considered personally involved if they: (1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference by failing to act on information indicating that the violation was occurring. Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). But "mere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003) (internal quotation marks omitted).

The Amended Complaint does allege that the Individual Defendants negligently supervised persons committing equal-protection violations and that "[s]upervisory personnel did not remedy the situation after they were advised of it and were thus grossly negligent in their performance of their duties and/or allowed a custom or practice of discrimination and retaliation to pervade the workplace." Am. Compl. ¶¶ 288, 295. Plaintiff has thus alleged personal involvement by Fischer. However, these allegations are entirely conclusory.

Plaintiff's additional allegations in the Response are also insufficient. She claims that Fischer may have known about the other Individual Defendants' conduct because: (1) Defendants "vigorous[ly]" contested her DHR complaint and workers' compensations claim; and (2) DOCCS has settled certain "civil lawsuits" in the last few years—settlements that were covered in a *New*

*York Times* article. Resp. at 23.

Plaintiff has pointed to nothing suggesting that the Commissioner of DOCCS has any reason to know about DHR complaints or workers' compensation claims, even when they are vigorously contested. Indeed, Plaintiff's logic would require that allegations of Fischer's personal involvement be found sufficient any time a prisoner's internal grievance regarding putatively § 1983-violative conduct is denied. And Plaintiff does not allege that the settled civil lawsuits involved any of the Individual Defendants, or even that these lawsuits involved discrimination. Cf. Murphy v. Goord, 445 F. Supp .2d 261, 266 (W.D.N.Y. 2006) (finding allegations of prison superintendent's personal involvement in beating insufficient where prisoner-plaintiff pointed to unrelated lawsuit against superintendent; book describing conditions at plaintiff's prison; and another lawsuit alleging rights-violations by DOCCS officials). Plaintiff has not plausibly alleged that Fischer knew or should have known about the Individual Defendants' conduct. She has done no more than use "mere linkage in the prison chain of command . . . to implicate a state commissioner of corrections . . . in a § 1983 claim." Richardson, 347 F.3d at 435. The § 1983 claim against Fischer, to the extent it seeks damages, is therefore dismissed. Furthermore, the Court denies Plaintiff leave to amend because: (1) the Original Memorandum gave Plaintiff notice of the infirmities of her allegations regarding Fischer's personal involvement; and (2) any amendment would be futile. See Original Mem. at 20

However, "'[p]ersonal involvement of an official sued in his official capacity is not necessary where the plaintiff is seeking only injunctive or declaratory relief under 42 U.S.C. § 1983.'" Duffy v. Evans, No. 11 Civ. 7605, 2012 WL 4327605, at *4 n.2 (S.D.N.Y. Sept. 19, 2012) (quoting Davidson v. Scully, 148 F. Supp. 2d 249, 254 (S.D.N.Y. 2001) (citation omitted)).

All that a Plaintiff must show is that the official had: (1) "a direct connection to, or responsibility for, the alleged illegal action[s]"; and (2) "the authority to perform the required act." Zappulla v. Fischer, No. 11 Civ. 6733, 2013 WL 1387033, at *10 (S.D.N.Y. Apr. 5, 2013) (internal quotation marks omitted and alteration in original). Fischer, by virtue of his supervisory position, has both a direct connection to the discrimination and the authority to reinstate and transfer Plaintiff. Cf. id. (refusing to dismiss prisoner-plaintiff's § 1983 claim against Fischer to the extent it sought an injunction compelling the provision of adequate medical care).[21] The Motion, to the extent it seeks dismissal of Plaintiff's equal-protection claim for injunctive or declaratory relief against Fischer in his official capacity, is therefore denied.

### 4. Conspiracy

Plaintiff alleges that the equal protection violations discussed *supra* were the result of a conspiracy by the Individual Defendants. Am. Compl. ¶¶ 310-16. In order to make out a § 1985(3) claim, a plaintiff must demonstrate: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." United Bhd. of Carpenters v. Scott, 463 U.S. 825, 828-29 (1983). "[A] plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." Webb v.

---

[21] The Court's finding that Plaintiff was not constructively discharged likely precludes the injunctive relief sought by Plaintiff. See Hertzberg v. SRAM Corp., 261 F.3d 651, 660 (7th Cir. 2001) (holding that, in the Title VII context, an employee who resigns and fails to demonstrate that she was constructively discharged is not entitled to reinstatement). But Defendants have not sought dismissal of Plaintiff's claims against Fischer on this ground.

Goord, 340 F.3d 105, 110 (2d Cir. 2003). The pleading standard for a conspiracy claim is demanding. See Kiryas Joel Alliance v. Village of Kiryas Joel, 495 F. App'x 183, 190 (2d Cir. 2012) (noting that vague and conclusory allegations that defendants entered into unlawful agreement are insufficient); Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir. 1999) (same). Even detailed allegations of parallel conduct do not suffice without some factual basis for inferring the existence of an agreement. See Twombly, 550 U.S. 544.

Plaintiff has not sufficiently alleged a factual basis for her conspiracy claim. The Individual Defendants' discriminatory actions differed significantly: Morse insulted Plaintiff publicly, while Weeks failed to discipline Morse for doing so and improperly counseled Plaintiff. Moreover, the Defendants also occupied different positions: Morse was a co-worker of Plaintiff's at Coxsackie, Weeks a supervisor, Fischer the Commissioner of DOCCS, and Doe and Roe occupied undetermined positions at Coxsackie, Greene, or some other section of DOCCS. Plaintiff has, at most, alleged somewhat parallel action in that each of the Defendants allegedly discriminated against her in some way. Plaintiff's conspiracy claim is therefore dismissed. Furthermore, the Court denies Plaintiff leave to amend her conspiracy claim because: (1) the Original Memorandum gave Plaintiff notice of this claim's infirmities; and (2) any amendment would be futile. See Original Mem. at 21.

### C. State Tort Claims

#### 1. IIED

In order to make out an IIED claim in New York, a plaintiff must demonstrate extreme and outrageous conduct. Howell v. N.Y. Post Co., 612 N.E. 699, 702 (N.Y. 1993). Conduct is extreme and outrageous only where it "so outrageous in character, and so extreme in degree, as to go beyond

all possible bounds of decency . . . and [be] utterly intolerable in a civilized community." <u>Murphy v. Am. Home Prods. Corp.</u>, 448 N.E.2d 86, 90 (N.Y. 1983) (internal quotation marks omitted). "Very few claims satisfy the extreme and outrageous requirement of a[n] IIED claim. In fact, none of the IIED claims considered by the New York Court of Appeals have survived because the conduct was not sufficiently outrageous." <u>Elmowitz v. Exec. Towers at Lido</u>, 571 F. Supp. 2d 370, 378 (E.D.N.Y. 2008).

IIED claims have a one-year statute of limitations. <u>See</u> <u>Koster v. Chase Manhattan Bank</u>, 609 F. Supp. 1191, 1198 (S.D.N.Y. 1985); <u>Hansen v. Petrone</u>, 508 N.Y.S.2d 500 ( App. Div. 1986); N.Y. C.P.L.R. § 215(3). Conduct occurring more than a year before the March 2, 2012 filing of the Original Complaint can therefore be the basis for an IIED claim only if the continuing-violations doctrine applies. Under the continuing-violations doctrine, otherwise time-barred conduct may give rise to IIED liability where the plaintiff alleges continuous harm extending into the limitations period. <u>White v. City of New York</u>, No. 09-CV-10127, 2010 WL 2697054, at *3 (S.D.N.Y. July 7, 2010); <u>see also</u> <u>Acosta v. Loews Corp.</u>, 717 N.Y.S.2d 47, 50 (App. Div. 2000). The series of events alleged to constitute continuous harm must not be isolated and sporadic. <u>White</u>, 2010 WL 2697054, at *3.

### a. Morse

Morse publicly insulted Plaintiff in January 2011. Plaintiff's telephone was disabled and her chair dismantled at about the same time by "unknown persons"—persons who might have included Morse. Am. Compl. ¶ 26. However, Plaintiff also alleges conduct by Morse that may have fallen within the limitations period: his incitement of her co-workers to shun her and threaten her with tire slashing. Even if this were a sufficiently continuous course of conduct for application of the

continuing-violations doctrine, Morse's aggregate conduct is insufficiently extreme and outrageous.

His tirade, although highly offensive, misogynist, and demeaning, was a one-time occurrence

unaccompanied by physical contact or the threat thereof; likewise, the vandalism, shunning, and

threats of tire slashing, however disconcerting, did not involve actual or threatened physical contact

or implicate immediate bodily harm.[22] See Biberaj v. Pritchard Indus., Inc., 859 F. Supp. 2d 549,

557, 564-65 (S.D.N.Y. 2012) (granting defendants summary judgment on IIED claim where

Plaintiff alleged that supervisor and another employee repeatedly told her, in front of others, that she

was "shit," "nothing," an animal, a "bitch," a "slut," and a "whore"; and where plaintiff left work

twice in an ambulance as a result of this conduct); Salvatore v. KLM Royal Dutch Airlines, No. 98

Civ. 2450, 1999 WL 796172, at *2-3 (S.D.N.Y. Sept. 30, 1999) (finding that supervisor's

comments to employee-plaintiffs, including statement that one plaintiff "looks like a whore" and

women were "cunts," accompanied by unwanted touching, were insufficient to give rise an to IIED

claim); Walther v. Maricopa Int'l Inv., Corp., No. 97 Civ. 4816, 1998 WL 689943, at *4 (S.D.N.Y.

Sept. 30, 1998) (finding that defendant's alleged conduct, including threatening plaintiff by saying

"cocksucker, you're gonna pay," making unannounced visits to plaintiff's home late at night, and

frequently calling and leaving messages on plaintiff's phone, was insufficient to give rise to IIED

liability); Boyce v. N.Y.C. Mission Soc'y, 963 F. Supp. 290, 297 (S.D.N.Y. 1997) (dismissing IIED

claim where plaintiff alleged that her supervisor yelled and cursed at her, indicated that she was not

liked, and pounded on her office door); Kirwin v. N.Y.S. Office of Mental Health, 665 F. Supp.

1034, 1040 (E.D.N.Y. 1987) (dismissing IIED claim where plaintiff alleged that she was "ostracized

---

[22] Morse's putatively false statements to the DHR were made months later and are insufficiently related to his earlier conduct for application of the continuing-violations doctrine. Moreover, as discussed *infra*, those statements cannot give rise to IIED liability.

and isolated" from fellow staff); <u>Seltzer v. Bayer</u>, 709 N.Y.S.2d 21, 23 ( App. Div. 2001) (finding that IIED claim should have been dismissed where defendant allegedly dumped a pile of cement on the sidewalk in front of plaintiff's house, tossed lighted cigarettes into plaintiff's backyard, and threw eggs on his front steps); <u>Owen v. Leventritt</u>, 571 N.Y.S.2d 25, 25 ( App. Div. 1991) (finding that public threat to kill pregnant plaintiff was insufficient to give rise to an IIED claim and noting that "mere threats . . . no matter how upsetting, are insufficient to constitute the tort of intentional infliction of emotional distress"); cf. <u>Bujnicki v. Am. Paving & Excavating, Inc.</u>, No. 99-CV-646, 2002 WL 34691183, at *1-3, *7-9 (W.D.N.Y. Jan. 22, 2002) (holding that IIED was sufficiently alleged where plaintiff endured daily public humiliation and verbal harassment, was not permitted to take breaks, had water and a shovel thrown at her, and was ordered to continue working after she fell ill); <u>Wishner v. Cont'l Airlines</u>, No. 94 CIV. 8239, 1997 WL 420286, at *1-3, *6 (S.D.N.Y. July 25, 1997) (denying motion for summary judgment on IIED claim where plaintiff's supervisor called her a "fucking cunt" with such regularity that she thought he believed it was her first name; there were crude and explicit cartoons and photographs of nude women directed at plaintiff in the lunch and break rooms; and plaintiff was forced to perform menial tasks, regularly called racist and sexist names, and subjected to a supervisor's unwanted sexual advances and threats); <u>Kohlhausen v. SUNY Rockland Cmty. Coll.</u>, No. 10-CV-3168, 2011 WL 1404934, at *15-16 (S.D.N.Y. Feb. 9, 2011) (finding IIED sufficiently alleged where supervisor-defendant repeatedly threatened to "kill and destroy [plaintiff]," yelled that he wanted to "kick [plaintiff] in the uterus and smash her in the face," warned her not to "fuck" with him or she would be "dead," threatened to lower her into her coffin after she'd committed suicide, and actually slashed her tires); <u>Weisman v. Weisman</u>, 485 N.Y.S.2d 570, 570-71 (App. Div. 1985) (finding IIED sufficiently alleged where defendant: (1)

destroyed windows in a house where plantiff and her children were staying, thereby exposing them to severe cold; and (2) threatened plaintiff's life by displaying a bullet).

### b. Weeks

Plaintiff premises her IIED claim against Weeks on his hearing-room counseling, his other unmerited counseling, his false reports to the DHR, and his failure to remedy Morse's harassment or the vandalism of Plaintiff's chair, computer,and phone. Am. Compl. ¶¶ 317-25. Even if this conduct were sufficiently continuous for application of the continuing-violations doctrine, it is insufficiently extreme and outrageous. At the hearing-room counseling Weeks did no more than sit quietly and, for half an hour, thumb through the employee manual in a room that, however airless, was regularly used for inmate hearings. Plaintiff was not confined—indeed, she was permitted to call a union representative and subsequently left the room when she began to feel ill. Even if this conduct was, as Plaintiff claims, likely to induce stress and lead to a migraine headache, it is a far cry from conduct deemed sufficiently outrageous to give rise to an IIED claim. See Kaminski v. United Parcel Serv., 501 N.Y.S.2d 871, 872-73 (App. Div. 1986) (affirming non-dismissal of an IIED claim where supervisors subjected the plaintiff to three hours of confinement, abusive language, and threats of criminal prosecution and prison time on Riker's Island); Vasarhelyi v. New Sch. for Soc. Research, 646 N.Y.S.2d 795, 795, 797 (App. Div. 1996) (finding extreme and outrageous conduct where criminal attorneys retained by the plaintiff's employer interrogated the plaintiff for ten hours, during which time they were "hostile, abusive and threatening," stated that the FBI in Washington was assisting in the investigation, humiliated the plaintiff for her poor knowledge of English, probed into her personal relationships with co-workers and her husband, and impugned her honesty and chastity); cf. Boyce, 963 F. Supp. at 297 (dismissing IIED claim where

plaintiff alleged that her supervisor yelled and cursed at her, indicated that she was not liked, pounded on her office door, and temporarily prevented her from leaving her supervisor's office). The other complained-of conduct, however discriminatory or disconcerting, is also insufficient to give rise to an IIED claim. See Gallo v. Alitalia-Linee Aeree, 585 F. Supp. 2d 520, 554 (S.D.N.Y. 2008) (dismissing IIED claim where plaintiff alleged that his complaints of harassment went unheeded); Daniels v. Alvarado, No. 03 CV 5832, 2004 WL 502561, at *6 (E.D.N.Y. Mar. 12, 2004) (finding that putatively false statements submitted to the DHR accusing plaintiff of incompetence, fraud, and unjustified billing practices were insufficiently outrageous); Murphy, 58 N.Y.2d at 303 (affirming dismissal of IIED claim where plaintiff was unjustly transferred, demoted, and then discharged in a humiliating manner); Burlew v. Am. Mut. Ins. Co., 472 NE.2d 682, 685 (N.Y. 1984) (dismissing an IIED claim premised on employer's refusal to authorize an operation for a work-related injury). The IIED claim against Weeks must therefore be dismissed.

### c. Roe and Doe

Plaintiff premises her IIED claims against Roe and Doe on conduct identical or similar to Weeks' and Morse's conduct, as well their role in monitoring Plaintiff on the video monitors at Greene. Am. Compl. ¶¶ 317-25. For the same reasons discussed *supra*, the IIED claims against Roe and Doe must be dismissed. The Court denies Plaintiff leave to amend her IIED claim because: (1) the Original Memorandum gave Plaintiff notice of this claim's infirmities; and (2) any amendment would be futile. See Original Mem. at 22-23

### 2. Prima Facie Tort

Plaintiff also brings a claim for prima facie tort. Am. Compl. ¶¶ 336-63. The claim is deficient for two reasons. First, it is duplicative of the IIED claim, as it is premised on the same

38

misconduct and alleges much of the same harm—nearly every paragraph alleges that Defendants caused Plaintiff "emotional harm" or "emotional distress." Id. A duplicative prima facie tort claim must be dismissed. See Chao v. Mount Sinai Hosp., No. 10 CV 2869, 2010 WL 5222118, at *15 (S.D.N.Y. Dec. 17, 2010) (dismissing prima facie tort claim where liability was premised on same conduct underlying defamation claim); Freihofer v. Hearst Corp., 480 N.E.2d 349, 355 (N.Y. 1985) ("[P]rima facie tort should not become a catch-all alternative for every cause of action which cannot stand on its own legs. Where relief may be afforded under traditional tort concepts, prima facie tort may not be invoked as a basis to sustain a pleading which otherwise fails to state a cause of action in conventional tort." (internal citations and quotation marks omitted)).

Second, Plaintiff's claim for prima facie tort challenges her constructive discharge by seeking to recover her lost wages and benefits. See Am. Compl. ¶¶ 358, 361, 363. But there is no New York tort of wrongful discharge. Murphy, 58 N.Y.2d at 304. Thus, where a plaintiff brings a claim for prima facie (or other) tort seeking to challenge the termination of her employment, the claim must be dismissed. See id. (dismissing prime face tort claim as an attempt to bring a wrongful discharge claim); see also Jones v. Ecological Analysts, Inc., No. 84 Civ. 1226, 1986 WL 6168, at *5 (S.D.N.Y. May 27, 1986) (dismissing plaintiff's claim for prima facie tort as an attempt to bootstrap a wrongful-discharge tort onto Title VII discrimination claims); Shipper v. Avon Prods., Inc., 605 F. Supp. 701, 706-07 (S.D.N.Y. 1985); Brooks v. Blue Cross of Ne. N.Y., Inc., 593 N.Y.S.2d 119, 120 (App. Div. 1993) (granting summary judgment where the allegations underlying plaintiff's prima facie tort claim, including that his discharge followed a "campaign of harassment" that included "unjustifiable criticism of his working ability" and "threats of firing," were too closely related to the unavailable cause of action of wrongful discharge). Plaintiff's claim for prima facie

tort is therefore dismissed. The Court denies Plaintiff leave to amend her prima-facie-tort claim because any amendment would be futile.

## IV.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 25) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED**, that the Amended Complaint's (Dkt. No. 23) Third Claim (for denial of equal protection under § 1983); Fourth Claim (for denial of procedural and substantive due process); and Fifth Claim (for First Amendment retaliation) are, to extent they are brought against the Employer Defendants, **DISMISSED with prejudice** for lack of subject-matter jurisdiction; and it is further

**ORDERED**, that the Amended Complaint's (Dkt. No. 23) Third Claim (for denial of equal protection under § 1983); Fourth Claim (for denial of procedural and substantive due process); Fifth Claim (for First Amendment retaliation); Sixth Claim (for conspiracy under § 1985(3)); Seventh Claim (for IIED); and Eighth Claim (for prima facie tort) are, to the extent that they seek damages—including back bay, front pay, punitive damages, and compensatory damages—against the Individual Defendants in their official capacities, **DISMISSED with prejudice** for lack of subject-matter jurisdiction; and it is further

**ORDERED**, that the remainder of Amended Complaint's (Dkt. No. 23) Fourth Claim (for denial of procedural and substantive due process); Fifth Claim (for First Amendment retaliation); Sixth Claim (for conspiracy under § 1985(3)); Seventh Claim (for IIED); and Eighth Claim (for prima facie tort) are **DISMISSED with prejudice**; and it is further

**ORDERED**, that the Amended Complaint's (Dkt. No. 23) Third Claim (for denial of equal

protection under § 1983) is, to the extent it is brought against Fischer in his individual capacity, **DISMISSED with prejudice**; and it is further

ORDERED, that the Amended Complaint's (Dkt. No. 23) First Claim (for Title VII discrimination); Second Claim (for Title VII retaliation); and Third Claim (for denial of equal protection under § 1983) are, to the extent they allege constructive discharge, **DISMISSED with prejudice**; and it is further

ORDERED, that the Motion (Dkt. No. 25), to the extent it seeks dismissal of the Amended Complaint's (Dkt. No. 23) non-constructive-discharge: (1) First Claim (for Title VII discrimination); (2) Second Claim (for Title VII retaliation); (3) Third Claim (for denial of equal protection under § 1983) against the non-Fischer Individual Defendants in their individual capacities; and (4) Third Claim (for denial of equal protection under § 1983) for injunctive and declaratory relief against all Individual Defendants in their official capacities, is **DENIED**; and it is further

ORDERED, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:        September 04, 2013
              Albany, NY

Lawrence E. Kahn
U.S. District Judge